IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Wilma Jean Tomlin,                :

    Plaintiff,                :

  v.                            :     Case No. 2:14-cv-596

                                  :     JUDGE JAMES L. GRAHAM
Commissioner of Social Security,        Magistrate Judge Kemp
                                  :
    Defendant.

REPORT AND RECOMMENDATION

I. Introduction

    Plaintiff, Wilma Jean Tomlin, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income. Those applications were filed on January 23, 2011, and alleged that Plaintiff became disabled on February 21, 2008.

    After initial administrative denials of her claim, Plaintiff was given a video hearing before an Administrative Law Judge on December 26, 2012. In a decision dated January 11, 2013, the ALJ denied benefits. That became the Commissioner's final decision on April 23, 2014, when the Appeals Council denied review.

    After Plaintiff filed this case, the Commissioner filed the administrative record on August 21, 2014. Plaintiff filed her statement of specific errors on September 26, 2014, to which the Commissioner responded on November 20, 2014. Plaintiff filed a reply on December 4, 2014, and the case is now ready to decide.

II. Plaintiff's Testimony at the Administrative Hearing

    Plaintiff, who was 50 years old at the time of the administrative hearing and who completed one and one-half years of college, testified as follows. Her testimony appears at pages

45-88 of the administrative record.

Plaintiff testified that she was in school to get her LPN but was not able to complete the clinical training.  She was sent to school to learn telecommunications installation and worked in that field for almost ten years.  She had also worked in sales for a salsa manufacturer for a few months, and as a traffic flagger and in a sewing factory for about the same amount of time.  She also got paid for sitting with a friend's mother, which was apparently her last paid position.

According to Plaintiff, she was no longer able to work due to back problems, rheumatoid arthritis, high blood pressure, and diabetes.  She had pain in both her lower and her upper back, as well as numbness in her legs.  Her pain prevented her from doing simple chores like mopping the floor, and she had trouble dressing herself.  Neither medication nor heat made it any better.  If her arthritis flared up she could not hold a gallon of milk.  The arthritis affected her fingers, wrists, elbows, knees, hips, and ankles.  She experienced flare-ups several times per month and they could last for days.  Plaintiff also said that she had asthma and used an inhaler for that problem.

From a mental health perspective, Plaintiff described herself as being stressed and agitated because she could not work.  She also had stress in her family life including the death of her siblings and other relatives.  She was attending counseling and also taking antidepressant medication.  Her symptoms included nightmares, anxiety attacks, and crying spells.  She had trouble concentrating and did not like being around people.  On a daily basis, she watched television and attempted household chores, but was not able to do much.  She also read and visited with her daughter and grandchild, but argued with her daughter constantly.

Plaintiff testified that she could sit for twenty or thirty

minutes, but not on a hard chair.  Her most comfortable position was lying down with her foot elevated.  She had more bad days than good ones in a typical week.  She had been in a car accident in 2008 and broke her hand, which was still impaired.  She did not think she could do even the companion job due to emotional flare-ups.

### III.  The Medical Records

The medical records in this case are found beginning on page 378 of the administrative record.  The pertinent records - those relating to Plaintiff's statement of error - can be summarized as follows.  Because Plaintiff raises only a credibility issue and does not rely extensively on the medical records, this summary will be brief.

Plaintiff broke two fingers on her right hand in an auto accident in February, 2008.  It does not appear she received any specific treatment for that injury other than being stabilized in the emergency room.  She had an x-ray done of her right shoulder in December, 2008, which showed no acute abnormalities, but did reveal some degenerative changes and a soft tissue calcification.

Dr. Sarver saw Plaintiff for a consultative psychological evaluation in April, 2011.  She told Dr. Sarver she had difficulty being around people and preferred to keep to herself.  She had never been treated for psychological symptoms.  Her daily activities included helping with cooking, dishes, and laundry, and reading and watching television.  Her mood was subdued and she reported daily crying spells.  Her insight was poor and Dr. Sarver thought she would have difficulty managing her anger, frustration, and impulses.  He diagnosed several disorders, rated her GAF at 55, and thought she could deal adequately with simple job instructions, with some episodic interference from pain and depression.  He said the same about her ability to maintain attention and concentration, thought she would have a hard time

relating to others, and concluded that she would have "difficulty dealing with typical work pressures." (Tr. 487-94). She did subsequently seek mental health counseling and was assessed by Tri-County Mental Health and Counseling Services as having a GAF of 50-53.

Dr. Padamadan did a physical consultative examination on April 5, 2011. Plaintiff had good or excellent range of motion of the shoulders, elbows, wrists, fingers, hips, knees, and ankles. Her muscle and grip strength were normal. Testing of her back was also normal and she could heel and toe walk. His final diagnoses included obesity, low back pain without objective findings of functional impairment, hypertension, recent onset diabetes, and a history of rotator cuff symptoms and anxiety disorder. He thought she could do light work but should not have to climb poles, ladders, or balance beams or to crawl and kneel. (Tr. 496-98). When she was seen at the Holzer Clinic on September 4, 2012, her active problems were described only as hypertension, a wrist injury, and a wrist sprain, and she had no arthralgias or localized joint swelling or stiffness. Several weeks later, she did report back pain and tingling in her upper legs, but she had normal movement of all her extremities and good lumbar range of motion. Straight leg testing was negative. Mild changes in the lumbar spine were noted on an x-ray. (Tr. 535-45). An MRI taken later showed only mild findings except for a prominent disc bulge on the left at L5/S1. (Tr. 555). Dr. Still, who saw Plaintiff at the Holzer Clinic, consistently prescribed Hydrocodone-Acetaminophen for pain.

IV. The Vocational Testimony

Patricia Posey was the vocational expert in this case. Her testimony begins on page 88 of the administrative record.

Ms. Posey testified that Plaintiff's past work included basic data communications installer, a light, skilled job. The

other jobs she did, none of which were performed for very long, were either unskilled or semi-skilled and were done at the light exertional level.  Plaintiff did not have any skills that transferred to sedentary occupations.

Ms. Posey was then asked some questions about a hypothetical person who could work at the light exertional level but could never climb ladders, ropes, or scaffolding and could occasionally climb ramps and stairs and balance, kneel, stoop, crouch, and crawl.  The person also had to avoid concentrated exposure to airborne pollutants, vibration, and workplace hazards.  Also, he or she could use the upper extremities frequently for manipulation.  Ms. Posey said such a person could work as a sewing machine operator and also as a rental clerk in a storage facility, a photocopying machine operator, and a non-postal mail clerk.

A second hypothetical question was then asked, describing a person who had these additional restrictions: he or she could understand, remember, and carry out only simple, routine, repetitive-type tasks requiring the use of little independent judgment and decision-making, and the tasks could not have stringent speed or rate-based production requirements.  The person could also tolerate only limited contact with coworkers, supervisors, and the public.  Ms. Posey said that such a person could do the three jobs previously identified and could be a night cleaner as well.  Finally, if the person had to alternate between sitting and standing every thirty minutes, and could use his or her hands only occasionally for grasping and fine fingering, there would be no light jobs available except for tanning salon attendant, and no sedentary jobs but surveillance system monitor.  Ms. Posey testified that someone who missed a portion of the workday on a consistent basis could not be employed.

V.  The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 12-30 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2009.  Next, he found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of February 21, 2008.  Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including arthritis with an elevated rheumatoid factor, lumbar spine degenerative disease, asthma, obesity, depression/adjustment disorder with mixed anxiety and depressed mood, anxiety, pain disorder due to psychological factors and a general medical condition, a personality disorder, and alcohol abuse.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the light exertional level but that she was unable to climb ladders, ropes, or scaffolds.  She could occasionally climb stairs and ramps, balance, kneel, stoop, crouch and crawl.  She had to avoid concentrated exposure to airborne pollutants, vibration, and workplace hazards.  From a psychological standpoint, she could understand, remember, and carry out simple, routine tasks that require the use of little independent judgment and decision-making on a sustained basis, and the tasks should be without stringent speed or rate-based production requirements, meaning no fast-paced assembly line work.  She could have occasional contact with the public,

coworkers and supervisors. The ALJ found that Plaintiff had no past relevant work, but with these restrictions, Plaintiff could do jobs such as storage facility rental clerk, photo machine operator, and night cleaner. The ALJ also determined that these jobs existed in significant numbers in the national and regional economies. Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI. Plaintiff's Statement of Specific Errors

In her statement of specific errors, Plaintiff raises a single issue: the ALJ did not follow the requirements of the applicable regulations and rulings (20 C.F.R. §404.929(c)(3) and 1529(c)(3), and SSR 96-7p) in finding that her allegations of disabling pain were not credible. That issue is evaluated under the following legal standard.

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB,

340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

<u>The Credibility Determination</u>

Generally speaking, a social security ALJ is not permitted to reject allegations of disabling symptoms, including pain, solely because objective medical evidence is lacking.  Rather, the ALJ must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, and any other pertinent factors.  20 C.F.R. §404.1529(c)(3).  Although the ALJ is given wide latitude to make determinations about a claimant's credibility, the ALJ is still required to provide an explanation of the reasons why a claimant is not considered to be entirely credible, and the Court may overturn the ALJ's credibility determination if the reasons given do not have substantial support in the record.  <u>See, e.g. Felisky v. Bowen</u>, 35 F.3d 1027 (6th Cir. 1994).

The credibility finding at issue appears at Tr. 24-27.  As it relates to Plaintiff's physical limitations, the ALJ made these findings.  First, he said that the "severity of the claimant's limitations is inconsistent with the evidence of record." (Tr. 25).  After discussing her asthma, which is not an issue here, he turned to her joint complaints.  He noted the two finger fractures from the automobile accident but pointed out that they were never treated.  He summarized the results of the April 5, 2011 consultative examination, which was basically normal (although Plaintiff did complain of shoulder pain).  He

-8-

also characterized Dr. Still's September 4, 2012 examination as essentially normal, and referred to the fact that although Plaintiff had been prescribed medication for pain, she usually took only Ibuprofen.  Her back examination on April 5, 2011, the ALJ said, was also unremarkable, with straight leg raising being normal, and there were no objective findings of functional impairment.

The ALJ also found that Plaintiff had "not always presented as fully credible" and that there were "discrepancies and inconsistencies in the record that belie her credibility as a fact witness." (Tr. 27).  For example, what he perceived to be discrepancies as to her driving history, including driving under a license suspension, caused him to "question her veracity." Id. He also thought that if she had disabling pain she would not be taking only over-the-counter medication.  Finally, he stated that "reported inconsistencies and discrepancies regarding severity of symptoms in the record reflect poorly upon the reliability of the information provided by the claimant." Id.  He then concluded that her daily activities of watching television, preparing simple meals, vacuuming, checking the mailbox, driving, washing dishes, doing laundry, reading, drawing, interacting with others, talking to her boyfriend, paying bills, handling a savings account, using a checkbook, and following instructions showed reasonable functionality and that there was "no reason why she could not function equally well in a competitive work environment if he (sic) were motivated to do so." Id.  He noted that the residual functional capacity as a whole was supported by the opinion of Dr. Padamadan, by Plaintiff's own report of her daily activities, by the record of intermittent treatment, by the "minimal medical findings," and by her history of noncompliance, including not taking prescribed medications and continuing to smoke.  (Tr. 28).

Plaintiff attacks this determination on multiple grounds.

-9-

She asserts that the ALJ did not review the factors listed in SSR 96-7p; that his conclusion about her driving misstates the evidence; and that his discussion of her medication history was inaccurate.  She also contends that both the ALJ and the Commissioner, in the responsive brief, focus too much on the medical evidence as not providing objective support for her complaints of pain.  Finally, in her reply, she argues that the ALJ selectively parsed the record with respect to her activities of daily living, crediting only what she said during the course of the psychological consultative examination and ignoring what she said in her function report which she completed in February, 2011.  The Commissioner, in turn, asserts that "the record is replete with support for the ALJ's finding that Plaintiff's complaints of debilitating impairments were not entirely credible."  Commissioner's Memorandum in Opposition, Doc. 14, at 11.

    The Court begins with what appears to be an assumption underlying Plaintiff's argument - that an ALJ has not considered the various factors relating to credibility which are listed either in §404.1529(c) or SSR 96-7p if he does not discuss each of them in the administrative decision.  That is not the law.  It is true that the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  See SSR 96-7p; see also Rogers v. Comm'r of Social Security, 486 F.3d 234, 248 (6th Cir. 2007).  But "[t]here is no requirement ... that the ALJ expressly discuss each listed factor," Coleman v. Astrue, 2010 WL 4094299, *15 (M.D. Tenn. Oct. 18, 2010), especially where the ALJ has "expressly stated that she had considered S.S.R. 96-7p" and "[t]here is no indication that the ALJ failed to do so."  White v. Comm'r of Social Security, 572 F.3d 272, 287 (6th Cir. 2009).  That is the case here, so the only question is whether the ALJ

-10-

properly considered the various factors which led him to discount Plaintiff's credibility, and whether his discussion of these factors has substantial support in the record.

Certainly, the ALJ was heavily influenced by the lack of objective medical support for Plaintiff's claim of disabling symptoms. He cited to several examinations which were, for the most part, normal, and which led the consultative examiner to conclude that she did not have objective findings of functional impairment. The examinations in this case not only did not confirm Plaintiff's reports of incapacitating pain, but they did not show many severe underlying physical conditions or lead the doctors to describe significant physical limitations. While an ALJ may not rely exclusively on the absence of physical evidence of pain, he may consider the claimant's medical history, the duration, frequency, and intensity of the claimant's symptoms, precipitating and aggravating factors, medication (including side effects), and treatment or therapy. "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." Walters v. Comm'r of Social Security, 127 F.3d 525, 531 (6th Cir. 1997). "The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination." Gilmore v. Astrue, 2011 WL 2682990, *12 (M.D. Tenn. July 11, 2011), adopted and affirmed 2011 WL 3205394 (M.D. Tenn. July 28, 2011). That is what the ALJ did here, and his characterization of the content of the pertinent medical examinations and evaluations is consistent with the record.

In addition to the medical evidence, the ALJ also considered other factors which are pertinent to the credibility decision. Plaintiff did admit to some deviation from prescribed treatment, both in terms of not taking pain medication and continuing to

-11-

smoke, and the ALJ was not required to accept her explanation of these matters. Further, "evidence tending to show that the plaintiff had a pattern of noncompliance with prescribed medication was relevant for the ALJ to consider" in evaluating the claimant's credibility. Carr v. Colvin, 2013 WL 1309094, *24 (M.D. Tenn. March 12, 2013), adopted and affirmed 2013 WL 1284326 (M.D. Tenn. March 28, 2013). The testimony about her driving situation was, perhaps, not a significant factor, but it was also not a major part of the ALJ's decision, and can safely be disregarded. See Ullman v. Comm'r of Social Security, 693 F.3d 709, 713-14 (6th Cir. 2012).

 The final point made by Plaintiff relates to her activities of daily living. The ALJ cited to activities of daily living as some evidence that Plaintiff was not as functionally impaired as she claimed. She did indicate, in her own report, that she could prepare simple meals and that with help, she could perform a number of household chores. She also said that she had the ability to do various things which require some level of attention and concentration like paying bills, using a checkbook, and handling a savings account. (Tr. 339-45). While these are certainly not the equivalent of sustained employment, they are factors to consider, especially in evaluating credibility. See Murphy v. Comm'r of Social Security, 2014 WL 5432125, *8 (S.D. Ohio Oct. 27, 2014)("an ALJ may take activities of daily living into account in making a credibility determination, especially if those activities appear inconsistent with the Plaintiff's own reports of what she can and cannot do").

 In the final analysis, the Court must give heed to the proposition that an ALJ's credibility finding is something that a reviewing court "may not disturb absent compelling reason." Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001). Reviewing courts "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Garner v.

-12-

Heckler, 745 F.2d 383, 387 (6th Cir. 1984).  Here, it is evident from the record that the ALJ considered not only the lack of objective medical evidence to support Plaintiff's claims, but other relevant factors, and that he acted within the considerable discretion allotted to him in weighing that evidence.  For that reason, the Court finds Plaintiff's statement of error to be without merit.

### VII.    Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the Defendant.

### VIII.   Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge